# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Gerald E. Booker, individually
and on behalf of all others
similarly situated,

   Plaintiff,

v.

The City of Saint Paul, a
municipal corporation and as
representative defendant for all
other similarly situated
municipal corporations,

   Defendant.

Civil No. 12-CV-203 (SRN/SER)

MEMORANDUM OPINION
AND ORDER

———————————————————————————————

A.L. Brown, Capitol City Law Group, LLC, 155 South Wabasha, Suite 125, Saint Paul,
Minnesota 55107; Andrew L. Davick and Anthony J. Nemo, Meshbesher & Spence, Ltd.,
1616 Park Avenue South, Minneapolis, Minnesota 55405, for Plaintiff

Portia M. Hampton-Flowers, Saint Paul City Attorney's Office, 121 Seventh Place East,
Suite 4500, Saint Paul, Minnesota 55101, for Defendant
———————————————————————————————

SUSAN RICHARD NELSON, United States District Court Judge

 This matter is before the Court on Plaintiff's Motion for Partial Summary

Judgment on Counts I and II [Doc. No. 20]; Plaintiff's Motion to Certify Plaintiffs' Class

[Doc. No. 24]; and Defendant's Motion for Partial Summary Judgment [Doc. No. 35].

For the reasons set forth herein, Plaintiff's motions are denied and Defendant's motion is

granted.   Because the Court finds that no issues of fact remain in dispute, and that, as a

matter of law, the Minnesota vehicle forfeiture statute is constitutional, Plaintiff's claims are dismissed.

## I.    BACKGROUND

This suit arises from a vehicle forfeiture pursuant to Minn. Stat. § 169A.63 (the "Vehicle Forfeiture Act"), following Plaintiff Gerald Booker's May 30, 2011 arrest for driving while impaired (DWI).  (Def.'s Mem. Supp. Mot. for Partial Summ. J. at 6 [Doc. No. 38]) (citing Pl.'s Resp. to Req. for Admis. Nos. 1 and 6, Ex. I to Aff. of Portia Hampton-Flowers. [Doc. No. 39-1].)   On November 10, 2011, Booker pleaded guilty and was convicted of violating Minn. Stat. § 169A.20, subd. 1(5), which prohibits the operation of a motor vehicle by a person having a blood alcohol concentration of 0.08 or more.  (Id., No. 6.)[1]

Booker was the registered owner of a 2008 Toyota Camry that he contends was improperly forfeited by the City of St. Paul ("City") and Ramsey County ("County"). (First Am. Compl. ¶¶ 6-25 [Doc. No. 12].)  The Toyota Camry was returned to the registered lien holder, AmeriCredit Financial Services, Inc. ("AmeriCredit"), on April 20, 2012.  (Pl.'s Resp. to Req. for Admis. No. 7, Ex. I to Hampton-Flowers Aff. [Doc. No. 39-1]; DUI Seizures Chart at 1, Ex. S to Hampton-Flowers Aff. [Doc. No. 31-2].) Plaintiff claims that the vehicle forfeiture violates the Fourth and Fifth Amendments to the United States Constitution as well as Article I, Sections 7 and 10 of the Minnesota

---

[1]  He was subsequently sentenced to 36 months, which was stayed for seven years, and ordered to serve 30 days in the Ramsey County Correctional Facility. (Id.)

State Constitution. (First Am. Compl ¶¶ 44-61 [Doc. No. 12].)

## A.     Minnesota Vehicle Forfeiture Act

The Minnesota Vehicle Forfeiture Act, enacted in 2000 and amended in 2010 (and again in 2012), provides for vehicle forfeitures following designated driving-related offenses.  Minn. Stat. § 169A.63 (2010).  The Vehicle Forfeiture Act addresses the following: (1) the circumstances that may subject a vehicle to forfeiture; (2) the administrative and judicial forfeiture procedures; (3) the process for obtaining judicial review and determination of the forfeiture by the claimant; and (4) disposition of the vehicle.  Id.  Designated offenses under the Vehicle Forfeiture Act include, but are not limited to, the following:

> (1) a violation of section 169A.20 (driving while impaired) under the circumstances described in 169A.24 (first-degree driving while impaired), or 169A.25 (second-degree driving while impaired); or
>
> (2) a violation of section 169A.20 or an ordinance in conformity with it.

Id., subd. 1(e).

Following the commission of a designated offense, a vehicle may be seized by the appropriate agency under the following circumstances: (1) upon process by a court with jurisdiction; (2) incident to a lawful arrest or search; (3) where the vehicle is subject to a prior judgment in favor of the state in a criminal injunction or forfeiture; or (4) where there is probable cause to believe that the delay necessary to obtain process would result in removal or destruction of the vehicle.  Id., subd. 2; see also 9 Henry W. McCarr & Jack S. Norby, Minn. Prac., Criminal Law & Procedure § 36:68 ¶ A, subd. 2 (4th ed. 2012).

Seizure by an "appropriate agency" refers to a law enforcement agency with the authority to make an arrest for a designated offense, or with authority to require chemical tests for intoxication under Minn. Stat. 169A.51. Minn. Stat. § 169A.63, subd. 1 (2010). A vehicle is subject to forfeiture if it was used in the commission of a designated offense. Id., subd. 6.

The owner of a seized vehicle under Minn. Stat. § 169A.63 can take possession of the vehicle before the forfeiture determination by posting security or a bond payable to the appropriate agency in the amount equal to the retail value of the seized vehicle, subject to the approval of the appropriate agency. Id., subd. 4. Under such circumstances, the vehicle may only be returned if a disabling device is attached to the vehicle. Id. Then "[t]he forfeiture action must proceed against the security as if it were the seized vehicle." Id.

The administrative forfeiture procedure under Minn. Stat. § 169A.63 requires that the appropriate agency serve the driver or operator of the vehicle with a "notice of the seizure and intent to forfeit vehicle" within a reasonable time after seizure. Id., subd. 8(b). In addition to the driver or operator of the vehicle, notice must also be given to all persons known to have an ownership, possessory, or security interest in the vehicle within a reasonable time after serving the driver or operator. Id. The notice requirements under Subdivision 8 are as follows:

(c) The notice must be in writing and contain:

(1) a description of the vehicle seized;

(2) the date of seizure; and

(3) notice of the right to obtain judicial review of the forfeiture and of the procedure for obtaining that judicial review, printed in English, Hmong, and Spanish. Substantially the following language must appear conspicuously: "IF YOU DO NOT DEMAND JUDICIAL REVIEW EXACTLY AS PRESCRIBED IN MINNESOTA STATUTES, SECTION 169A.63, SUBDIVISION 8, YOU LOSE THE RIGHT TO A JUDICIAL DETERMINATION OF THIS FORFEITURE AND YOU LOSE ANY RIGHT YOU MAY HAVE TO THE ABOVE-DESCRIBED PROPERTY. YOU MAY NOT HAVE TO PAY THE FILING FEE FOR THE DEMAND IF DETERMINED YOU ARE UNABLE TO AFFORD THE FEE. IF THE PROPERTY IS WORTH $7,500 OR LESS, YOU MAY FILE YOUR CLAIM IN CONCILIATION COURT. YOU DO NOT HAVE TO PAY THE CONCILIATION COURT FILING FEE IF THE PROPERTY IS WORTH LESS THAN $500."

Id., subd. 8(c). The statute also sets forth the procedure for demanding a judicial

determination of the forfeiture:

(d) Within 30 days following service of a notice of seizure and forfeiture under this subdivision, a claimant may file a demand for a judicial determination of the forfeiture. The demand must be in the form of a civil complaint and must be filed with the court administrator in the county in which the seizure occurred, together with proof of service of a copy of the complaint on the prosecuting authority having jurisdiction over the forfeiture and the appropriate agency that initiated the forfeiture, including the standard filing fee for civil actions unless the petitioner has the right to sue in forma pauperis under section 563.01. If the value of the seized property is $7,500 or less, the claimant may file an action in conciliation court for recovery of the seized vehicle. A copy of the conciliation court statement of claim must be served personally or by mail on the prosecuting authority having jurisdiction over the forfeiture, as well as on the appropriate agency that initiated the forfeiture, within 30 days following service of the notice of seizure and forfeiture under this subdivision. If the value of the seized property is less than $500, the claimant does not have to pay the conciliation court filing fee.

No responsive pleading is required of the prosecuting authority and no court fees may be charged for the prosecuting authority's appearance in the matter. The prosecuting authority may appear for the appropriate agency. Pleadings, filings, and methods of service are governed by the Rules of Civil Procedure.

(e) The complaint must be captioned in the name of the claimant as plaintiff and the seized vehicle as defendant, and must state with specificity the grounds on which the claimant alleges the vehicle was improperly seized, the claimant's interest in the vehicle seized, and any affirmative defenses the claimant may have. Notwithstanding any law to the contrary, an action for the return of a vehicle seized under this section may not be maintained by or on behalf of any person who has been served with a notice of seizure and forfeiture unless the person has complied with this subdivision.

(f) If the claimant makes a timely demand for a judicial determination under this subdivision, the forfeiture proceedings must be conducted as provided under subdivision 9.

Id., subd. 8(c)-(f).

If a demand for judicial determination is not requested in accordance with Subdivision 8, the prosecuting authority may file a civil *in rem* action against the vehicle. Id., subd. 9(b). However, if a demand is properly requested by the owner of the vehicle, a judicial determination may not precede adjudication in a criminal prosecution without the consent of the prosecuting authority. Id., subd. 9(d). Moreover, the prosecuting authority will presume that the vehicle is subject to forfeiture if it establishes that the vehicle was used in the commission of a designated offense. Id., subd. 9(e).

If a vehicle is administratively forfeited or found to be subject to forfeiture, the appropriate agency shall:

(1) sell the vehicle and distribute the proceeds under paragraph (b); or

6

(2) keep the vehicle for official use. If the agency keeps a forfeited motor vehicle for official use, it shall make reasonable efforts to ensure that the motor vehicle is available for use by the agency's officers who participate in the drug abuse resistance education program.

(b) The proceeds from the sale of forfeited vehicles, after payment of seizure, towing, storage, forfeiture, and sale expenses, and satisfaction of valid liens against the property, must be distributed as follows:

(1) 70 percent of the proceeds must be forwarded to the appropriate agency for deposit as a supplement to the state or local agency's operating fund or similar fund for use in DWI-related enforcement, training, and education; and

(2) 30 percent of the money or proceeds must be forwarded to the prosecuting authority that handled the forfeiture for deposit as a supplement to its operating fund or similar fund for prosecutorial purposes.

Id., subd. 10. A financial institution with a valid security interest or lease covering

the forfeited vehicle may choose to dispose of the vehicle in lieu of the appropriate

agency by notifying the agency in writing within 30 days of receiving notice. Id.,

subd. 11(a). The appropriate agency then releases the vehicle to the institution or

its agent for disposal in accordance with Subdivision 11. Id., subd. 11(b).

**B.    Other Statutes**

In addition to the Vehicle Forfeiture Act, Minn. Stat. § 169A.63 (2010), two

other Minnesota statutes address the seizure of and return of property seized by

peace officers – Minn. Stat. § 626.04 and Minn. Stat. § 626.21.

Section 626.04 provides for the seizure of property by peace officers, as

well as the procedure for challenging such seizures. Under this statute, if the

7

property owner makes a written request for the return of the property and the property is not returned within 48 hours, the aggrieved property owner may file a petition for the return of the property in the district court in which the property was seized. Minn. Stat. § 626.04. A hearing on the petition shall be held within 30 days of filing, unless good cause is shown for an extension. Id. However, after the hearing, the property shall not be returned if the court finds that:

(1) the property is being held in good faith as potential evidence in any matter, charged or uncharged;

(2) the property may be subject to forfeiture proceedings;

(3) the property is contraband or may contain contraband; or

(4) the property is subject to other lawful retention.

Id.

The other statute, Minn. Stat. § 626.21, provides remedies for persons aggrieved by unlawful searches and seizures to move for the return of their property and the suppression of its use as evidence. Minn. Stat. § 626.21. Such persons may move the district court for the district in which the property seizure occurred, or the district court having jurisdiction of the substantive criminal offense. Id. "If the motion is granted the property shall be restored unless otherwise subject to lawful detention, and it shall not be admissible in evidence at any hearing or trial." Id.

## C.     Arrest and Forfeiture

On May 30, 2011, Booker was stopped for moving violations near the intersection of Isabel Street West and Wabasha Street in St. Paul. (Incident Report at 1, Ex. A to Hampton-Flowers Aff. [Doc. No. 31-1].) Booker was arrested at the scene on suspicion of driving while impaired after performing "poorly" on standardized field sobriety tests. (Def.'s Mem. Supp. Mot. for Partial Summ. J. at 4 [Doc. No. 38]; Incident Report at 6, Ex. A to Hampton-Flowers Aff. [Doc. No. 31-1].) Booker's 2008 Toyota Camry was towed from the scene to the St. Paul City impound lot. (Incident Report at 6, Ex. A to Hampton-Flowers Aff. [Doc. No. 31-1].) Booker was transported to the Law Enforcement Center where he declined the right to consult with an attorney, but consented to a blood test. (Implied Consent Form, Ex. C to Decl. of A.L. Brown [Doc. No. 22-1].) This was Booker's fourth DWI arrest within ten years, which elevated the charge to first-degree driving while impaired pursuant to Minn. Stat. § 169A.24, subd. 1(1). (Incident Report at 6, Ex. A to Hampton-Flowers Aff. [Doc. No. 31-1]; Supp'l Incident Report, Ex. C to Hampton-Flowers Aff. [Doc. No. 31-1].) The arresting officer provided Booker with an Impaired Operation Notice of Seizure and Intent to Forfeit Vehicle in accordance with Minn. Stat. § 169A.63. (First Am. Compl. ¶ 10 [Doc. No. 12].) Booker signed and dated the Notice on May 30, 2011. (Notice of Seizure, Ex. B to Hampton-Flowers Aff. [Doc. No. 31-1]; Pl.'s Resp. to Req. for Admis. No. 2, Ex. I to Hampton-Flowers Aff. [Doc. No. 39-1].) The Ramsey County Attorney's

Office is the prosecuting authority for first-degree DWI criminal offenses in St. Paul. (Def.'s Opp'n Mem. at 4 [Doc. No. 38]) (citing Ellis Dep. at 25-26, Ex. M to Hampton-Flowers Aff. [Doc. No. 39-2].)

Booker made two unsuccessful attempts to recover his 2008 Toyota Camry after the seizure. (Booker Dep. at 15-17, Ex. O to Hampton-Flowers Aff. [Doc. No. 31-2].) Booker testified that he first called someone at the St. Paul City Hall or County Courthouse. (Id.) The person with whom Booker spoke informed him of the process to recover the vehicle. (Id.) Booker contends that because he could not afford the $320.00 filing fee, he did not file a demand for judicial review. (First Am. Compl. ¶ 30 [Doc. No. 12].) In addition to the phone call, Booker testified that he next visited an unidentified individual at City Hall or the County Courthouse to obtain more information on recovering his vehicle. (Booker Dep. at 16-17, Ex. O to Hampton-Flowers Aff. [Doc. No. 31-2].) Finally, in January 2012, Booker's attorney sent a letter on his behalf to the City Attorney, requesting the return of his vehicle. (Brown Decl. ¶¶ 2-3 [Doc. No. 22].) Booker did not file a demand for judicial review or determination of the vehicle forfeiture within thirty days of notice as proscribed by Minn. Stat. § 169A.63, subd. 8(d)-(e). (Pl.'s Resp. to Req. for Admis. No. 3, Ex. I to Hampton-Flowers Aff. [Doc. No. 39-1].) Additionally, he did not submit an affidavit requesting authorization to proceed in forma pauperis with a judicial review or determination pursuant to Minn. Stat. § 563.01. (Id. at Resp. No. 4.)

The Impaired Operation Notice of Seizure and Intent to Forfeit Vehicle was

mailed to the lien holder, AmeriCredit, on July 8, 2011. (Impaired Operation

Notice of Seizure, Ex. D to Hampton-Flowers Aff. [Doc. No. 31-1].) AmeriCredit

found that the seizure of the 2008 Toyota Camry constituted default under its

Retail Installment Contract with Booker. (Letter of 7/27/11 from AmeriCredit to

Ramsey County Attorney's Office, Ex. E to Hampton-Flowers Aff. [Doc. No. 31-

1].) On July 27, 2011, AmeriCredit sent a Petition for Remission/Mitigation to the

Ramsey County Attorney's Office requesting immediate return of the vehicle. (Id.

at 10, 17.) The County authorized the release of the vehicle to AmeriCredit on

April 6, 2012 and it was physically released to AmeriCredit on April 20, 2012.

(Forfeited Vehicle Release Agreement, Ex. T to Hampton-Flowers Aff. [Doc. No.

31-2]; DUI Seizures List at 1, Ex. S to Hampton-Flowers Aff. [Doc. No. 31-2].)

### D.   Litigation

Plaintiff filed suit in January 2012 alleging due process and unreasonable

seizure violations. (Compl. ¶¶ 23-38 [Doc. No. 1].) Plaintiff amended the

Complaint in April 2012 and alleges the following constitutional claims in a

proposed class action suit against the City: (1) violation of the Due Process Clause

of the Fifth Amendment to the United States Constitution and Article I, Section 7

of the Minnesota State Constitution by depriving Plaintiff of his property interest

in the 2008 Toyota Camry without a timely pre- or post-deprivation hearing; and

(2) violation of the Unreasonable Seizure Clause of the Fourth Amendment to the

United States Constitution and Article I, Section 10 of the Minnesota State

Constitution by Defendants' prolonged seizure of Plaintiff's vehicle.[2]  (First Am.

Compl. ¶¶ 43-61 [Doc. No. 12].)

Plaintiff moves for partial summary judgment on the due process claims

contained in Counts 1 and 2 and also moves to certify the class of plaintiffs.

Plaintiff alleges that due process mandates a pre-deprivation and prompt post-

deprivation hearing prior to forfeiture.  He contends that Defendants' forfeiture

policy, pursuant to Minn. Stat. § 169A.63, effectively denied him an adequate and

timely opportunity to be heard.  (Id. ¶¶ 44-53; Pl.'s Mem. Supp. Mot. for Partial

Summ. J. at 10 [Doc. No. 21].)  Specifically, Plaintiff argues that Defendant's

seizure and forfeiture policy does not allow for a pre-deprivation hearing since

seizure is automatic under Minn. Stat. § 169A.63, subd. 2.  (Id. at 10-11.)  Plaintiff

further alleges that he was denied a prompt post-deprivation hearing because the

law requires criminal adjudication before providing an opportunity for a judicial

forfeiture determination.  He contends that his first opportunity to challenge the

City's seizure would not have come until five months after City's seizure of his

vehicle. (Id. at 15.)  In short, Plaintiff argues that he was afforded no hearing

whatsoever prior to forfeiture.  (Id. at 10.)

---

[2]  Plaintiff also initially brought his claims against Ramsey County Attorney John
Choi in his official capacity, however, the claims against Attorney Choi were dismissed
on August 15, 2012. (Order to Dismiss [Doc. No. 19].)

In response, Defendant argues that Minnesota's forfeiture statute is constitutional on its face and as applied to Plaintiff. (Def.'s Opp'n Mem. at 1 [Doc. No. 30].) The City contends that when it seized Plaintiff's vehicle pursuant to his arrest for first-degree driving while impaired, it provided him with notice of its forfeiture intent and of the process by which Plaintiff could challenge the forfeiture. (Id.) Defendant contends that the lack of a pre-deprivation hearing does not offend due process and it did not deny him a timely post-deprivation hearing. (Id.)

In its cross motion, Defendant moves for partial summary judgment on Plaintiff's claims in Counts 3 and 4 that allege an unreasonable seizure under the Fourth Amendment and the Minnesota Constitution. (Def.'s Mem. Supp. Mot. for Partial Summ. J. at 1-2 [Doc. No 38].) The City argues that the seizure of Plaintiff's vehicle, in connection with his arrest for first-degree driving while impaired, occurred incident to an arrest and did not violate federal or state constitutional standards. (Id. at 10-14.) Rather, Defendant contends that the seizure was reasonable, that Mr. Booker received notice of the intended forfeiture and that he was given notice of the means to challenge the forfeiture. (Id. at 13-18.) In addition, the City argues that Plaintiff fails to state a claim upon which relief can be granted because he does not plead his federal constitutional claims pursuant to 42 U.S.C. § 1983. (Id. at 18.) Similarly, the City argues that Plaintiff's claims arising under the Minnesota Constitution fail because Minnesota

13

Courts do not recognize a damage remedy for violations of the Minnesota Constitution. (Id. at 19.)

In opposition to Defendant's motion, Mr. Booker contends that the Fourth Amendment's requirement of prompt judicial review in matters of personal liberty in a criminal context should likewise apply to prolonged seizures of personal property. (Pl.'s Opp'n Mem. at 4 [Doc. No. 40].) Plaintiff therefore argues that the protection against unreasonable searches and seizures applies equally to civil forfeiture proceedings. (Id. at 7.)

Plaintiff also moves for class certification for all persons who were denied a pre-deprivation hearing as well as those denied a prompt post-deprivation hearing before a neutral fact-finder prior to vehicle seizure after January 25, 2006. (Pl.'s Mem. Supp. Class Certification at 2 [Doc. No. 25].) Plaintiff contends that he satisfies all of the requirements under Fed. R. Civ. P. 23(a) for class certification. First, Plaintiff argues that numerosity is satisfied based on his belief that there are over 200 putative class members and hundreds more yet identified, rendering joinder impracticable. (Id. at 4.) Second, Plaintiff argues that commonality and typicality are satisfied because he and putative class members have identical due process claims, injuries, and legal and remedial theories making them "literally interchangeable." (Id. at 3-4.) Third, Plaintiff contends that the adequacy of representation requirement is satisfied since all class members would primarily seek monetary relief and because Plaintiff's counsel has "significant experience in

litigating similar cases" in this District and Circuit.  (Id. at 7-8.)  Finally, Plaintiff

contends that the claims of all putative class members share common questions of

law pursuant to 42 U.S.C. § 1983, in satisfaction of Fed. R. Civ. P. 23(b)(3).  (Id.

at 9-10.)

Defendant opposes Plaintiff's motion for class certification, arguing that he

lacks standing because he did not suffer an injury fairly traceable to the City's

actions.  (Def.'s Opp'n Mem. to Class Certif. at 8 [Doc. No. 29].)  In addition, the

City argues that Plaintiff fails to satisfy the elements necessary for class

certification under Fed. R. Civ. P. 23.  (Id. at 10- 24.)

## II.     DISCUSSION

### A.     Summary Judgment Standard of Review

Summary judgment is proper if there are no disputed issues of material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  The Court must view the evidence and the inferences that may be

reasonably drawn from the evidence in the light most favorable to the nonmoving

party.  Enter. Bank v. Magna Bank of Missouri, 92 F.3d 743, 747 (8th Cir. 1996).

However, "summary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole,

which are designed to secure the just, speedy, and inexpensive determination of

every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**B.      Due Process Claims**

Plaintiff asserts procedural due process claims under the federal and state constitutions. (First Am. Compl., Counts 1 & 2 [Doc. No. 12]) (citing U.S. Const. Amend V; Minn. Const. art I, § 7.) Mr. Booker contends that the City violated his due process rights by failing to afford him pre- and post-deprivation hearings prior to the forfeiture of his vehicle. (First Am. Compl. ¶¶ 46-47; 51-52 [Doc. No. 12].) For purposes of the Court's review here, the same standards and analyses apply under the federal and state constitutional provisions. See Lukkason v. 1993 Chevrolet Extended Cab Pickup, 590 N.W.2d 803, 806 (Minn. Ct. App. 1999).

As noted, Minnesota's Vehicle Forfeiture Act provides for the forfeiture of a vehicle used in the commission of a "designated offense," including first-degree driving while impaired. Minn. Stat. § 169A.63, subd. 1(d); subd. 6; subd. 8 (2010). The statute also provides that a motor vehicle may be seized without process if "the seizure is incident to a lawful arrest or a lawful search," or there is "probable cause to believe that the delay occasioned by the need to obtain process

would result in the removal or destruction of the vehicle." Id., subd. 2(b)(1); (3). A vehicle is presumed to be subject to forfeiture "if the driver is convicted of the designated offense upon which the forfeiture is based." Id., subd. 7(1). The right to possession vests immediately in the appropriate agency "upon commission of the conduct resulting in the designated offense . . . giving rise to the forfeiture." Id., subd. 3. Mr. Booker admits that he operated his vehicle while under the influence of alcohol, in violation of state law, and pleaded guilty to the first-degree driving while impaired offense. (Pl.'s Resp. to Req. for Admis. No. 1, Ex. I to Hampton-Flowers Aff. [Doc. No. 39-1].) Also, there is no dispute that the arresting officer provided Plaintiff with a copy of the required notice at the time of arrest, fully consistent with the notice requirements of the statute. (Notice, Ex. B to Hampton-Flowers Aff. [Doc. No. 39-1]; First Am. Compl. ¶ 10 [Doc. No. 12].)

As noted, the Vehicle Forfeiture Act also provides owners of vehicles with an opportunity to demand a judicial determination of forfeiture, provided they file a civil complaint within 30 days following service of the notice of forfeiture. Minn. Stat. 169A.63, subd. 8(d) (2010). The statute notes that if a vehicle owner fails to demand judicial review, he or she loses the right to a judicial determination of the forfeiture. Id., subd. 8(b)(3). There is no dispute that Plaintiff failed to demand judicial review as proscribed in the statute. (Pl.'s Resp. to Req. for Admis. No. 3, Ex. I to Hampton-Flowers Aff. [Doc. No. 31-1].) Mr. Booker contends that he failed to do so because he could not afford the civil filing fee.

(Id.)  However, the statute provides that anyone who demands a judicial determination may also seek to proceed in forma pauperis.  Minn. Stat. § 169A.63, subd. 8(d) (2010).   Plaintiff did not seek in forma pauperis filing status.  (See Pl.'s Resp. to Req. for Admis. No. 3, Ex. I to Hampton-Flowers Aff. [Doc. No. 31-1].)

Booker alleges that Defendant denied him a pre-deprivation and post-deprivation hearing, in violation of his due process rights. (First Am. Compl. ¶¶ 44-53 [Doc. No. 12].)  The Due Process Clause of the Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."   U.S. Const. Amend V.  The Supreme Court has held that "some form of hearing is required before an individual is finally deprived of a property interest," including the right to notice and an opportunity to be heard at a meaningful time and in a meaningful manner.  Mathews v. Eldridge, 424 U.S. 319, 332-33 (1976).   Courts have specifically recognized cars as protected property interests under the Fifth Amendment.  Coleman v. Watt, 40 F.3d 255, 260 (8th Cir. 1994).  Defendant does not dispute that the seizure of Booker's vehicle constitutes the seizure of a recognized, constitutionally-protected property interest.  The question then is what process is owed for the deprivation of that property.

Because "[d]ue process is a flexible concept," its "procedural protections will vary depending on the particular deprivation involved."  Coleman, 40 F.3d at 260.  In Mathews, 424 U.S. at 335, the Supreme Court outlined three factors that courts must balance when determining what process is owed, and when that

process is due, in order for the state to deprive a person of their private property without violating the Constitution:

> [1] First, the private interest that will be affected by the official action; [2] second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id.  Under these factors, the Supreme Court has usually held that some kind of pre-deprivation hearing is required.  Zinermon v. Burch, 494 U.S. 113, 127 (1990). "In some circumstances, however, the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfied due process."  Id.

### 1.    Pre-Seizure Hearing

In Fuentes v. Shevin, the Supreme Court identified the limited circumstances in which the immediate seizure of a property interest is constitutionally permissible without a prior hearing.  407 U.S. 67, 91-92 (1972). Fuentes involved Florida and Pennsylvania statutes under which private citizens could obtain a writ of replevin to recover property allegedly wrongfully detained by another person.  Id. at 72.  The Supreme Court identified the following limited circumstances in which property may be seized absent a pre-seizure hearing: (1) the seizure is directly necessary to secure an important governmental or general public interest; (2) there is a special need for prompt action; and (3) the party

19

initiating the seizure is a government official responsible for determining that it was necessary and justified in this particular instance.  Id. at 91.  Applying these factors, the Supreme Court found that the Florida and Pennsylvania replevin statutes served no important governmental or general public interest – rather, they "allow summary seizure of a person's possessions when no more than private gain is at stake."  Id. at 92.  In addition, the Court noted that while there could be cases in which the goods in question might be in danger of destruction or concealment, the statutes in question were not "'narrowly drawn to meet any such unusual condition,'" nor did the facts present such an unusual situation.  Id. at 93 (quoting Sniadach v. Family Fin. Corp. of Bay View, 395 U.S. 337, 339 (1969)).   Finally, the Court found that the statutes "abdicate[d] effective state control over state power," with no state official participating in the decision to seek a writ, reviewing the basis for the claim to repossession, evaluating the need for immediate seizure, or providing information to the court on these matters.  Id.

In Calero-Toledo v. Pearson Yacht Leasing Co., the Supreme Court applied the three Fuentes factors to the seizure of a yacht on which officers had found narcotics, for which no pre-seizure hearing was provided.  416 U.S. 663, 678 (1974).  First, unlike the statutes in Fuentes, the Court found that the challenged Puerto Rican forfeiture statute served a significant government interest in "preventing continued illicit use of the property and in enforcing criminal sanctions."  Id. at 679.  Second, the Court also found that pre-seizure notice and

hearing might "frustrate the interests served by the statues," since the property at issue – a yacht – "will often be of a sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given." Id.  Third, unlike the seizure in Fuentes, the seizure of the yacht in Calero-Toledo was initiated by law enforcement officers, as opposed to private parties. Id.  The Court therefore held that the challenged Puerto Rican statute which permitted seizures without notice and hearing until after seizure was not unconstitutional.  Id.  Defendant here argues that like the yacht in Calero-Toledo, prompt action was necessary.  (Def.'s Opp'n Mem. at 15 [Doc. No. 30].)

This Court finds that the seizure of Plaintiff's car – the very instrumentality of the offense for which he was charged – is one of the limited circumstances under Fuentes for which a pre-seizure hearing is not required under the Fifth Amendment.  First, the government has a significant interest in protecting the public, as well as the driver, from the harm caused by drinking and driving. Second, the government also has a need for prompt action.  Given that Booker was arrested on his fourth DWI charge, the government's need to promptly remove his access to a vehicle was significant.  As with the yacht in Calero-Toledo, a car is easily transported. Finally, the seizure here was undertaken by a government entity which maintains a "monopoly of legitimate force," Fuentes, 407 U.S. at 91, to determine whether such a seizure is necessary and proper in the first place.  Under these circumstances, the Court finds that due process does not require a pre-seizure

hearing.

### 2.      Post-Seizure Hearing

The Court therefore turns to the question of whether due process requires a post-seizure hearing in this context. As a matter of federal constitutional law, the Second Circuit has held that when the government seizes a vehicle in connection with a crime and attempts to forfeit the car, the car's owner must have a prompt opportunity to challenge the forfeiture. Krimstock v. Kelly (Krimstock I), 306 F.3d 40, 60-67 (2d Cir. 2002). Applying the Mathews factors, the court found that the private interest of ownership in a vehicle was significant; but the risk of erroneous deprivation, while substantial, weighed in favor of the government. However, the court found that the government's interest could be protected by a less restrictive alternative. Id. at 60-67. Balancing these factors, the court held that when the government seizes a car used in connection with a crime and seeks to forfeit the car, the owner must receive a prompt post-seizure retention hearing, with adequate notice. Id. at 68-70; Krimstock v. Kelly (Krimstock II), 464 F.3d 246, 255 (2d Cir. 2006).

In Coleman, the Eighth Circuit applied a Mathews analysis to determine whether the impoundment of the plaintiff's vehicle and seven-day delay for a post-seizure hearing violated due process. 40 F.3d at 262. The court found that the plaintiff's property interest in his car was substantial; the risk of erroneous deprivation was not determinative; but a shorter delay would decrease the risk, and

the additional administrative and financial burden imposed on the state by a prompt hearing was small.  Id. at 260-61.  The Eighth Circuit concluded that a seven-day delay until the opportunity for a post-deprivation hearing did not, as a matter of law, satisfy due process concerns, and remanded to the district court for further proceedings.  40 F.3d at 261-62.  The court noted that several evidentiary issues of fact remained, including the actual source of the seven-day delay.  Id. at 262.  If, however, "[the plaintiff] had actual notice of the availability of an earlier opportunity to be heard but sat on his rights for several days before requesting a hearing, then [plaintiff] cannot complain that the City failed to provide a constitutionally prompt hearing."  Id.[3]

Applying the Mathews factors to the facts of this case, the private interest affected by the official action – the ownership of a vehicle – is significant.  "Automobiles occupy a central place in the lives of most Americans, providing access to jobs, schools, and recreation as well as to the daily necessities of life."  Coleman, 40 F.3d at 260; see also Krimstock I, 306 F.3d at 44 (noting that "[a] car or truck is often central to a person's livelihood or daily activities.")  However, the

_____

[3]  On a related issue in Coleman, the Eighth Circuit reviewed whether the district court properly applied the Parratt/Hudson doctrine.  Id. (citing Parratt v. Taylor, 451 U.S. 527 (1981); Hudson v. Palmer, 468 U.S. 517 (1984)).  Under this doctrine, a random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process if the state provides adequate post-deprivation remedies.  Id.  At the hearing on Plaintiff's motion in this case, counsel for the City acknowledged that the seizure and forfeiture of Plaintiff's vehicle was not a random act.  Accordingly, the Court does not consider the application of the Parratt/Hudson doctrine here.

risk of erroneous deprivation is limited, and this factor weighs in the government's favor.  Under the statute, a vehicle is not subject to forfeiture if the owner demonstrates by clear and convincing evidence that he or she "did not have actual or constructive knowledge that the vehicle would be used or operated in any manner contrary to law or that the owner took reasonable steps to prevent use of the vehicle by the offender."  Minn. Stat. § 169A.63, subd. 7(3)(d) (2010).   In addition, "the risk of an erroneous deprivation . . . is further mitigated . . . by the probable-cause requirement for the initial arrest and seizure."  Krimstock II, 464 F.3d at 255.  As to the government's interest, the government has a substantial interest in removing impaired drivers and their vehicles from the roads.  The burden that would be imposed under Plaintiff's requested procedure – a judicial determination hearing that might occur prior to a criminal probable cause hearing – would be significant.

In any event, a balancing of the Mathews factors to determine whether a post-hearing seizure is required here is a somewhat moot exercise because the statute does, in fact, provide for a post-seizure hearing.  The Vehicle Forfeiture Act, both the current version and the one in effect at the relevant time, permits the aggrieved vehicle owner to promptly file a demand for a judicial determination of forfeiture, within 30 days following the service of notice of seizure.  Minn. Stat. §

169A.63, subd. 8(d) (2010).[4]  While the statute provides that any criminal prosecution of the designated offense must precede the judicial forfeiture determination, the aggrieved vehicle owner may seek the prosecuting authority's consent to allow the forfeiture proceeding to occur first.  Id., subd. 9(d).   Plaintiff did not do so.   Moreover, two other statutes, Minn. Stat. § 626.04 and § 626.21, also provide procedures by which a property owner may challenge the seizure of his or her property.  Plaintiff did not seek relief under these statutes either.

The situation before the Court is unlike the situation in which a property owner lacks any form of notice and hearing.  Rather, it resembles the situation in Coleman in which the Eighth Circuit speculated that if the plaintiff had actual notice of the availability of an earlier opportunity to be heard, but failed to act for several days before requesting a hearing, he could not complain that the government failed to provide a constitutionally prompt hearing.  40 F.3d at 262. The Court finds that Minn. Stat. § 169A.63 provides notice and an opportunity for a post-deprivation hearing.  The statute is not unconstitutional, nor was it unconstitutionally applied to Mr. Booker.  Plaintiff's Motion for Partial Summary Judgment on his due process claims is therefore denied.

Finding that no material issues of fact remain in dispute, and the matter

---

[4] The current version of the statute provides the aggrieved car owner 60 days in which to file a demand for a judicial determination.  Minn. Stat. 169A.63, subd. 8(e) (2012).

having been fully briefed and argued, the Court *sua sponte* dismisses Plaintiff's

due process claims (Counts I and II) with prejudice.  See, e.g., Madewell v.

Downs, 68 F.3d 1030, 1049 (8th Cir. 1995) (finding district court's grant of

summary judgment *sua sponte* proper where nonmoving party's liability was based

on the same body of facts and law, and facts were fully argued by the parties);

Ahlberg v. United States, 780 F. Supp. 625, 626 (D. Minn. 1991) (stating, "A

district court may grant summary judgment for the non-movant *sua sponte*.").

### C.    Unreasonable Seizure

Plaintiff contends that the "prolonged seizure" of his car violated his Fourth

Amendment rights and analogous rights under the Minnesota Constitution.  (First

Am. Compl. ¶¶ 54-61 [Doc. No. 12].)   The Fourth Amendment, made applicable

to the States by the Fourteenth, Ker v. California, 374 U.S. 23, 30 (1963), provides

in pertinent part that the "right of the people to be secure in their persons, houses,

papers, and effects, against unreasonable searches and seizures, shall not be

violated. . . ."  U.S. Const. amend IV.   Accordingly, every search or seizure by a

government agent must be reasonable.  Id.  A "seizure" of property occurs when

"'there is some meaningful interference with an individual's possessory interests in

that property.'"  Soldal v. Cook County, Illinois, 506 U.S. 56, 61 (1992) (quoting

United States v. Jacobsen, 466 U.S. 109, 113 (1984)).

The Supreme Court has recognized that the seizure of property in a civil

forfeiture action implicates protections under both the Fourth and Fifth

26

Amendments.  United States v. James Daniel Good Real Prop., 510 U.S. 43, 50-52

(1993) (stating, "Though the Fourth Amendment places limits on the

Government's power to seize property for purposes of forfeiture, it does not

provide the sole measure of constitutional protection that must be afforded

property owners in forfeiture proceedings.")  The Eighth Circuit has held that

"[w]hen a Fourth Amendment claim is brought, we need to conduct an

independent review of the seizure for reasonableness in addition to any analysis

regarding procedural due process."  Samuels v. Meriwether, 94 F.3d 1163, 1167

(1996).   The Second Circuit in Krimstock I described the interplay between an

aggrieved property owner's Fourth and Fifth Amendment rights in a forfeiture

action, noting the importance of probable cause to both analyses:

> For present purposes, we treat probable validity as a comprehensive
> due process concept that includes the City's probable cause for
> initially seizing vehicles. Clearly, the legality of a warrantless
> seizure is a component of the larger question of the probable validity
> of continued retention of a seized vehicle. If a seizure lacked
> probable cause, and the City could offer no untainted post-seizure
> evidence to justify further retention, the claimant's vehicle would
> ordinarily have to be released during the pendency of proceedings.

306 F.3d at 49.[5]

---

[5] The court noted, however, that despite the overlap between probable cause for seizure and the probable validity of a retention, the two "were not necessarily coextensive."  Id.  For example, the court observed that at a retention hearing, the government might successfully establish probable cause for the seizure of a car following a DWI arrest, but be unable to establish the probable validity of a continued deprivation, if there was proof of innocent ownership, or faulty Breathalyzer readings.  Id.

As to the general constitutionality of the Vehicle Forfeiture Act under the Fourth Amendment, in United States v. One 1980 Red Ferrari, VIN ZFFAA02A6A0032333, Iowa License No. UAY917, 875 F.2d 186, 188-89 (8th Cir. 1989), the Eighth Circuit considered an owner's constitutional challenge to a federal drug forfeiture statute and its Iowa statutory counterpart. The court found that the federal forfeiture statute was congruent with the Fourth Amendment because it required a showing of probable cause. 875 F.2d at 188.

A search incident to a lawful arrest is a recognized exception to the warrant requirement under the Fourth Amendment. Arizona v. Gant, 556 U.S. 332, 338 (2009). Items may also be seized pursuant to such a search, under certain circumstances, without violating the Fourth Amendment. See id. at 343-44 (discussing reasonableness of searches of vehicles incident to lawful arrests). Minnesota's Vehicle Forfeiture Act provides for seizure without process under limited circumstances: (1) if the seizure is incident to a lawful arrest or search; (2) if it is subject to seizure based on a prior judgment; or (3) if the seizing authority has probable cause to believe that the vehicle may be removed or destroyed pending any delay to obtain process. Minn. Stat. § 169A.63A, subd. 2 (2010). The Vehicle Forfeiture Act limits the seizure of property to circumstances for which the Supreme Court has permitted seizure (i.e., search and seizure incident to a lawful arrest), or where probable cause is shown, or where the seizing authority acts pursuant to a court judgment. Id. Accordingly, this Court finds the statute

28

consistent with the Fourth Amendment.  See One 1980 Red Ferrari, 875 F.2d at

188 (finding federal forfeiture statute did not violate the Fourth Amendment

because it required a showing of probable cause.)

In addition to finding the federal forfeiture statute constitutional in One

1980 Red Ferrari, the Eighth Circuit also upheld the constitutionality of the related

Iowa forfeiture statute.  Id. at 188-89.  The court found that the Iowa statute did

not permit unreasonable seizures because it expressly limited the type of property

subject to seizure and the conditions under which seizure was permissible:

> . . . [T]he Iowa statute explicitly limits the type of property that may
> be seized to that taken in execution of a search or arrest warrant or a
> warrantless arrest, and further limits the seizure of such property to
> that obtained in violation of law; that unlawfully possessed; that used
> to commit or conceal an offense; that subject to forfeiture under
> other statutory provisions; and that relevant as evidence in a criminal
> prosecution.

Id.

Minnesota's Vehicle Forfeiture Act is similarly limited.  First, the type of

property subject to seizure and forfeiture is confined to vehicles.  Minn. Stat.

169A.63 (2010) (entitled "Vehicle Forfeiture").  It is inapplicable to vehicles that

are stolen or taken in violation of the law.  Id., subd. 1(g).  Moreover, innocent

owners' vehicles are not subject to forfeiture, if the owner can demonstrate by

clear and convincing evidence that the owner lacked constructive knowledge of the

misuse of the vehicle, or took reasonable steps to prevent use of the vehicle by the

offender.  Id., subd. 7(d).  Second, as previously noted, the statute provides for

seizure without process only under certain circumstances – including when the seizure is incident to a lawful arrest or search, or if the seizing authority has probable cause to believe that the vehicle may be removed or destroyed pending any delay to obtain process. Id., subd. 2.

Vehicles are presumed subject to forfeiture in equally limited circumstances: (1) when the driver is convicted of the "designated offense" on which the forfeiture is based; (2) when the driver fails to appear for a scheduled court appearance regarding the designated offense; or (3) the driver's conduct results in a designated license revocation and the driver either fails to seek judicial review of revocation, or the revocation is reviewed and sustained. Id., subd. 7. Designated offenses are limited to first- and second-degree driving while impaired offenses, or to driving while impaired offenses committed by persons lacking a driver's license, or persons subject to a restricted license. Id., subd. 1(e). Given these limitations and consistent with One 1980 Red Ferrari, this Court finds that Minn. Stat. § 169A.63 does not violate the prohibitions against unreasonable seizures under the Fourth Amendment and the Minnesota Constitution.

### 1.    Pre-Seizure Hearing

Although Plaintiff's unreasonable seizure claims refer only to a "prolonged seizure" (First Am. Compl. ¶¶ 56; 60 [Doc. No. 12]), Plaintiff urges the Court to apply the Supreme Court's holding in Gerstein v. Pugh, 420 U.S. 103 (1975), to civil forfeiture proceedings, triggering the requirement of a post-seizure hearing.

(Pl.'s Opp'n Mem. at 7 [Doc. No. 40].)   It is not clear whether Plaintiff claims entitlement to a pre-seizure hearing with respect to his unreasonable seizure claims.  Based on his argument with respect to <u>Gerstein</u>, which concerns post-seizure hearings, the Court presumes that Booker claims entitlement to only a post-seizure hearing under the Fourth Amendment.

Even if Booker claims that the Fourth Amendment requires a pre-seizure hearing, the Court finds that none is required here.  First, to the extent that his unreasonable seizure/Fourth Amendment claims implicate due process, a pre-seizure hearing is not required for the reasons set forth *supra* regarding due process.  Moreover, the Eighth Circuit has held that "'[w]hen seizing property for criminal investigatory purposes, compliance with the Fourth Amendment satisfies pre-deprivation procedural due process as well.'"  <u>PPS, Inc. v. Faulkner Cnty., Ark.</u>, 630 F.3d 1098, 1107 (8th Cir. 2011) (quoting <u>Sanders v. City of San Diego</u>, 93 F.3d 1423, 1429 (9th Cir. 1996)).

In <u>One 1980 Red Ferrari</u>, 875 F.2d at 188-89, the Eighth Circuit observed that "there is no 'requirement of preseizure notice and hearing in a forfeiture case.'" (quoting <u>United States v. One 1985 Cadillac Seville</u>, 866 F.2d 1142, 1147 (9th Cir. 1989)).  In <u>Walters v. Wolf</u>, 660 F.3d 307, 314 (8th Cir. 2011), the Eighth Circuit found that the initial seizure of the plaintiff's handgun following his arrest did not implicate pre-deprivation procedural due process (although a second deprivation did implicate due process).  The court noted that the arresting officer's

probable cause determination that Walters was a fugitive unlawfully in possession of a firearm was validly supported at the time of arrest, even though it was eventually deemed unfounded.  Id.  Here, the arresting officer's probable cause determination was well-founded, given Booker's guilty plea.

Plaintiff also cites United States v. South Half of Lot 7 and Lot 8, Block 14, Kountze's 3rd Addition to the City of Omaha, 876 F.2d 1362, 1371-72 (8th Cir. 1989), rev'd on other grounds, 910 F.2d 488 (8th Cir. 1990), for the apparent proposition that a pre-seizure probable cause determination by a judicial officer is required under the Fourth Amendment.  In South Half of Lot 7 and 8, the government filed complaints for forfeiture against certain real properties, alleging that they were used for illegal gambling.  Id. at 1363.  Based on the civil complaints, a deputy clerk for the United States District Court for the District of Nebraska issued warrants directing the seizure of the property without any probable cause determination by a judicial officer or any pre-seizure hearing.  Id.  The Eighth Circuit found the government's procedures constitutionally deficient.  Id. at 1371.

This Court finds South Half of Lot 7 and 8 inapposite to the facts of this case.  Implicit in Minnesota's Vehicle Forfeiture Act is an on-the-scene probable cause determination by the arresting officer that the vehicle owner is driving while impaired.  Minn. Stat. § 169A.63, subd. 2(b)(1) (2010) (providing that a vehicle is subject to forfeiture if the seizure is incident to a lawful arrest or lawful search).

Moreover, explicit in the statute are additional grounds for seizure: an on-the-scene probable cause determination by the arresting officer that any delay caused by obtaining process would result in the removal or destruction of the vehicle. <u>Id.</u>, subd. 2(b)(3).[6] In that vein, in <u>South Half of Lot 7 and Lot 8</u>, the Eighth Circuit distinguished the Supreme Court's decision in <u>Calero-Toledo</u>, noting that "[t]he Court justified its deference to government forfeiture actions in <u>Calero-Toledo</u> on the basis of the Fourth Amendment's requirement that the government establish probable cause prior to any seizure." 876 F.2d at 1371 (citing <u>Calero-Toledo</u>, 416 U.S. at 679-80, n. 14.)

Here, not only does the statute generally require an on-the-scene probable cause determination, <u>see</u> Minn. Stat. §§ 169A.63, subd. 2(b)(1)&(3), the arresting officer in this case made such a determination. (Incident Report at 1, Ex. A to Brown Decl. [Doc. No. 22-1].) The arresting officer observed Booker driving at a high rate of speed, making a wide turn and swerving, prompting the officer to initiate an investigatory stop. <u>Id.</u> During the stop, the officer noticed that Plaintiff's eyes were watery and bloodshot, his speech was slurred, and he admitted to having consumed some alcohol earlier in the evening. (<u>Id.</u>) Booker then underwent a field sobriety test, which he failed. (<u>Id.</u>) Consequently, the

---

[6] The statute also provides a third ground for seizure – where the vehicle is subject to a prior judgment in favor of the state in a criminal injunction or forfeiture proceeding. <u>Id.</u>, subd. 2(b)(2).

officer arrested Booker on suspicion of drunk driving – an offense for which he was ultimately charged and pleaded guilty.  (Pl.'s Resp. to Req. for Admis. No. 1, Ex. I to Hampton-Flowers Aff. [Doc. No. 31-1].)   Probable cause was established. Under these circumstances, and for all of the reasons set forth above, the Court finds the Fourth Amendment does not require a pre-seizure hearing.

### 2.      Post-Seizure Hearing

Turning to Plaintiff's argument in support of a post-seizure hearing, in Gerstein the Supreme Court held that the Fourth Amendment requires a prompt probable cause hearing subsequent to the warrantless seizure and arrest of a person on criminal charges. 420 U.S. at 114.  In reaching its decision in Gerstein, the Court noted that an officer's on-the-scene assessment of probable cause provided sufficient legal justification for a brief period of detention.  Id. at 113-14. However, given the 'high stakes' attendant to the loss of personal liberty, the Court found that a prompt post-arrest probable cause hearing was constitutionally required:

> Once the suspect is in custody, however, the reasons that justify
> dispensing with the magistrate's neutral judgment evaporate. There
> no longer is any danger that the suspect will escape or commit
> further crimes while the police submit their evidence to a magistrate.
> And, while the State's reasons for taking summary action subside,
> the suspect's need for a neutral determination of probable cause
> increases significantly. The consequences of prolonged detention
> may be more serious than the interference occasioned by arrest.
> Pretrial confinement may imperil the suspect's job, interrupt his
> source of income, and impair his family relationships. See R.
> Goldfarb, Ransom 32-91 (1965); L. Katz, Justice Is the Crime 51-62

(1972).  Even pretrial release may be accompanied by burdensome
conditions that effect a significant restraint of liberty.  See, e.g., 18
U.S.C. §§ 3146(a)(2), (5).  When the stakes are this high, the
detached judgment of a neutral magistrate is essential if the Fourth
Amendment is to furnish meaningful protection from unfounded
interference with liberty.  Accordingly, we hold that the Fourth
Amendment requires a judicial determination of probable cause as a
prerequisite to extended restraint of liberty following arrest.

Id. at 114.  The Supreme Court subsequently ruled that a post-arrest probable

cause judicial determination following the detention of a person must occur within

48 hours of arrest in order to comply with the promptness of Gerstein.  County of

Riverside v. McLaughlin, 500 U.S. 44, 56 (1991).

Plaintiff also relies upon United States v. Dixon, 51 F.3d 1376, 1380 (8th

Cir. 1995), for the proposition that detention of property is subject to the same

standards as the detention of a person.  (Pl.'s Opp'n Mem. at 7-10 [Doc. No. 40].)

He therefore urges the Court to extend Gerstein to civil forfeiture proceedings,

requiring a post-seizure probable cause determination.  (Id.)  In Dixon, an airport

investigative stop criminal drug case, the Eighth Circuit noted that the detention of

a traveler's duffel bag is subject to the same standards as the detention of a person

"because the contents of a travel bag may be necessary to, or even the reason for,

the trip."  51 F.3d at 1380-81.  Dixon does not support Plaintiff's broad position

that Gerstein's requirement for a prompt probable cause hearing should apply to

the seizure of all personal property.  The seizure and detention of one's vehicle,

while a significant deprivation, is not comparable to the high stakes loss of

personal liberty that attends criminal custody.  In <u>James Daniel Good Real Prop.</u>, 510 U.S. at 50, the Supreme Court rejected the government's argument that <u>Gerstein</u> applied to the seizure of property such that the Fourth Amendment provided the only measure of protection to aggrieved property owners.  The Court stated, "<u>Gerstein</u> . . . concerned not the seizure of property but the arrest or detention of criminal suspects . . . ."  <u>Id.</u>  Plaintiff cites no controlling precedent extending <u>Gerstein</u> to the civil forfeiture context.   The Court finds no requirement for such a hearing under the Fourth Amendment in this context.

In support of its motion for summary judgment on Plaintiff's unreasonable seizure claims, Defendant additionally argues that the Court should consider the factors applied to the determination of a right to a speedy trial in <u>Barker v. Wingo</u>, 407 U.S. 514 (1972).  (Def.'s Opp'n Mem. at 21 [Doc. No. 30]; Def.'s Mem. Supp. Mot. for Partial Summ. J. at 15-16 [Doc. No. 38].) The Supreme Court has applied the <u>Barker</u> factors when considering whether an 18-month delay between a property seizure and the filing of a forfeiture action violated due process.  <u>United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency</u>, 461 U.S. 555, 569-70 (1983) (finding that plaintiff's due process interests were fully protected by the eventual forfeiture proceeding, even though an 18-month period of delay was "substantial.").

In <u>Krimstock I</u>, however, the Second Circuit found <u>Barker's</u> speedy trial factors inapplicable to the facts of that case where the plaintiffs sought a prompt

post-seizure opportunity to challenge the government's retention of their vehicles: ". . .plaintiffs' claim does not concern the speed with which civil forfeiture proceedings themselves are instituted or conducted."  306 F.3d at 68.  The court explained, "The Constitution . . . distinguishes between the need for prompt review of the propriety of continued government custody on the one hand, and delays in rendering final judgment on the other."  Id.

Booker asserts that unlike the plaintiff in Eight Thousand Eight Hundred & Fifty Dollars, he is not complaining about any delay in the initiation of forfeiture proceedings.  (Pl.'s Reply at 8 [Doc. No. 32].)  Rather, similar to Krimstock I, he is complaining about the lack of a prompt post-deprivation hearing in which to test the propriety of the seizure prior to the forfeiture proceedings.  Id. at 8-9.  In light of the allegations in the First Amended Complaint, the Court agrees that application of the Mathews factors is the most appropriate analysis to apply to Plaintiff's due process claims.  As Plaintiff notes, his due process claims focus on the procedures available to challenge seizure, rather than on the length of delay in any resolution of the forfeiture proceedings.

However, as to Booker's Fourth Amendment/unreasonable seizure claims, the Court finds application of the Barker factors additionally helpful to its analysis for three reasons.  First, Booker's Fourth Amendment/unreasonable seizure claims allege a "prolonged seizure" (First Am. Compl. ¶¶ 56; 60 [Doc. No. 12]), which suggests concerns regarding delay.  Second, his argument that the Court should

37

extend Gerstein's prompt hearing requirement to civil forfeiture actions again raises concerns about timeliness. Third, courts have recognized the interaction of analyses under the Fourth and Fifth Amendments to civil forfeiture claims. See James Daniel Good Real Prop., 510 U.S. at 50-52; Samuels, 94 F.3d at 1167. Therefore, although Eight Thousand Eight Hundred & Fifty Dollars and Krimstock I address the applicability of the Barker factors in the context of due process claims, given the pleading of Plaintiff's unreasonable seizure claims, Barker lends additional support to the Court's analysis.

As noted in Eight Thousand Eight Hundred & Fifty Dollars, the Barker factors include consideration of: (1) the length of the delay; (2) the government's reason for the delay; (3) the claimant's assertion of the right to a judicial hearing; and (4) whether the claimant was prejudiced by the delay. 461 U.S. at 565-69. Regarding the first factor examining the length of the delay, it is impossible to know what the delay might have been, because Plaintiff failed to challenge the forfeiture under the statute. Plaintiff assumes that the delay would have taken five months, but because he never initiated the judicial review process, the record does not establish the length of the delay. For instance, had Plaintiff sought a forfeiture hearing prior to the final criminal resolution of his case, with the consent of the prosecutor, the period of time might have been considerably less. The government's asserted reason for any delay, such that it existed, was that it was

38

also addressing Plaintiff's underlying criminal prosecution and notifying the lien holder of the City's seizure and forfeiture intent.

Regarding the claimant's assertion of the right to a judicial hearing, although Booker contacted staff at City Hall and his attorney ultimately wrote a letter on his behalf, he failed to follow the clear procedure for challenging the forfeiture under Minn. Stat. § 169A.63.  As such, the City properly viewed the forfeiture of Booker's car as an administrative forfeiture.  See Minn. Stat. § 169A.63, subd. 8(c)(3) (2010) (noting that absent a claimant following the procedures for demanding judicial review, the claimant loses the right to a judicial determination). The notice of forfeiture that Booker received upon his arrest quoted the Vehicle Forfeiture Act, expressly warning him that

> IF YOU DO NOT DEMAND JUDICIAL REVIEW EXACTLY AS
> PRESCRIBED IN [Minn. Stat. § 169A.63, subd. 8], YOU LOSE
> THE RIGHT TO A JUDICIAL DETERMINATION OF THIS
> FORFEITURE AND YOU LOSE ANY RIGHT YOU MAY HAVE
> TO THE ABOVE-DESCRIBED PROPERTY.

(Notice at 1, Ex. E to Brown Dec. [Doc. No. 22-1].)  Booker acknowledged that he had received the notice.  (Id.)  In addition, he concedes that staff at City Hall with whom he spoke described the procedure for demanding judicial review.  (Booker Dep. at 15-17, Ex. O to Hampton-Flowers Aff. [Doc. No. 31-2].)  Moreover, Booker failed to expedite the judicial process by requesting that the prosecuting authority consent to a judicial determination on the forfeiture prior to Plaintiff's

criminal adjudication. (Pl.'s Resp. to Req. for Admis. No. 5, Ex. I to Hampton-Flowers Aff. [Doc. No. 31-1]); Minn. Stat. § 169A.63, subd. 9(d) (2010)).[7]

Plaintiff also failed to pursue alternative methods of challenging the City's seizure of his car. Under Minn. Stat. § 626.04, an owner of seized property may make a written request to the seizing officer's agency for the return of the property. If the property is not returned within 48 hours, the aggrieved owner may file a petition in district court for its return, for which a hearing shall be held within 30 days of filing. Similarly, under Minn. Stat. § 626.21, a property owner may move the district court having jurisdiction over the property or the underlying offense for its return. If the court grants the motion, the property shall be returned unless it is otherwise subject to lawful detention. Id.

While Plaintiff submits a variety of arguments that these alternative statutes would provide no meaningful relief, he nonetheless did not attempt to invoke them. As the Eighth Circuit noted in Coleman, if the property owner had "actual notice of the availability of an earlier opportunity to be heard but sat on his rights

---

[7] In addition, although Booker argues that the statute's bond alternative is essentially meaningless in practice because the City never accepts a bond in lieu of a vehicle (Pl.'s Mem. Supp. Mot. for Partial Summ. J. at 9 [Doc. No. 21]), the statute nonetheless provides that a vehicle owner may post a bond equal to the retail value of the vehicle prior to the determination of forfeiture. Minn. Stat. § 169A.63, subd. 4 (2010). On posting the bond, the vehicle may be returned to the owner only if a disabling device is attached to the vehicle. Id. It appears that Plaintiff did not post such a bond.

for several days before requesting a hearing, then [he] cannot complain that the City failed to provide a constitutionally prompt hearing." 40 F.3d at 262.

As to the final Barker factor, which considers whether the claimant was prejudiced by the delay, the Court finds this factor is not determinative. While a delay undoubtedly causes inconvenience, nothing in the record suggests that the delay prejudiced Booker in the determination of forfeiture.

For all of the foregoing reasons, whether applying the Barker factors or not, Defendant did not violate Plaintiff's rights against unreasonable seizure regarding a post-seizure hearing. Accordingly, the Court finds that Minn. Stat. § 169A.63 is not unconstitutional on its face or as applied. The statute serves the City's compelling interest in protecting the public by removing the vehicles of impaired owners from the streets. Plaintiff took no meaningful action to challenge the City's seizure, retention, and forfeiture of his vehicle, despite clear notice and an opportunity to do so.

Finally, to the extent that Plaintiff's unreasonable seizure claims implicate due process concerns, the Court finds that the City's seizure did not violate Booker's Fourth Amendment rights, for the reasons set forth herein regarding Plaintiff's due process post-deprivation rights. Accordingly, the Court finds that the City's seizure, retention, and forfeiture of Booker's vehicle was reasonable under the Fourth Amendment and the Minnesota Constitution. Defendant's Motion for Partial Summary Judgment is therefore granted.

**D.     Pleading**

The City argues that Plaintiff fails to state a claim upon which relief can be granted because he does not assert his federal and state constitutional claims pursuant to 42 U.S.C. § 1983.  While a civil litigant may not directly allege a cause of action under the Fourth or Fifth Amendments, § 1983 serves as a vehicle for "vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  Henley v. Brown, 686 F.3d 634, 640 (8th Cir. 2012) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).   While Plaintiff does not specifically refer to § 1983 in Counts 1 and 3 of the First Amended Complaint, he cites § 1983 in asserting the basis for federal jurisdiction.  (First Am. Compl. ¶ 1 [Doc. No. 12].)  In any event, given the Court's finding that Plaintiff's claims fail as a matter of law whether or not the Court were to find that Plaintiff should amend his federal constitutional claims, any such amendment would be futile, for the reasons set forth herein.

As to Defendant's argument that Plaintiff may not assert a claim for damages for violations of the Minnesota Constitution, this Court has previously held that the Minnesota Supreme Court has not recognized a private right of action for violations of the Minnesota Constitution.  Lawrence v. City of St. Paul, 740 F. Supp. 2d 1026, 1042, n.6 (D. Minn. 2010) (citing Minarik v. City of Minnestrista, No. A09-910, 2010 WL 346402, at *1 (Minn. Ct. App. Feb. 2, 2010)).

Accordingly, for this additional reason, Plaintiff's claims arising under the Minnesota Constitution in Counts 2 and 4 fail as a matter of law.

      **E.**     **Motion for Class Certification**

Because the Court finds that Plaintiffs' claims fail as a matter of law and that judgment must be entered against him, the Court denies his motion for class certification.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     Plaintiff's Motion for Partial Summary Judgment on Counts I and II [Doc. No. 20] is **DENIED**;

2.     Plaintiff's Motion to Certify Plaintiffs' Class [Doc. No. 24] is **DENIED**;

3.     Defendant's Motion for Partial Summary Judgment [Doc. No. 35] is **GRANTED**; and

4.     The Court *sua sponte* dismisses Plaintiff's due process claims.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   August 6, 2013

                                      s/Susan Richard Nelson
                                      SUSAN RICHARD NELSON
                                      United States District Court Judge